**Arthur Haywood FRANKLIN et al.,
Plaintiffs-In-Error,**

**v.**

**STATE of Tennessee, Defendant-In-Error.**

Court of Criminal Appeals of Tennessee.

May 16, 1974.

Certiorari Denied by Supreme Court
July 22, 1974.

Hugh W. Stanton, Jr., Asst. Public Defender, Memphis, for plaintiffs in error.

David M. Pack, Atty. Gen.; Weldon B. White, Jr., Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., T. E. Crawford and James W. Harrison, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

MITCHELL, Judge.

The defendants Arthur Haywood Franklin, Euan Bailey, Jr., and Frederick W. Johnson, represented by the Assistant Public Defender Honorable Robert I. Livingston, were convicted in the Criminal Court of Shelby County, Tennessee on March 30, 1973 of robbery by the use of a deadly weapon. The jury fixed their sentences at ten (10) years each in the penitentiary and the Presiding Judge Honorable William H. Williams duly pronounced judgment and sentence.

The defendants appealed and made the following assignments of error:

1. The evidence is not sufficient to sustain the verdict in that it preponderates against the verdict and in favor of the innocence of the defendants.

2. The verdict of the jury is contrary to the law and the evidence in this case.

3. The Court erred in admitting into evidence the statements of the defendants.

4. The Court erred in overruling the defendants' Motion for a Directed Verdict of acquittal.

5. The verdicts of the jury are based solely on the uncorroborated confessions of the defendants.

6. The Court erred in allowing the Assistant District Attorney General to allude to the defendants' failure to testify in their behalf.

7. The Court erred in overruling the defendant, Franklin's, Petition for a Writ of Habeas Corpus.

We have found the assignments of error to be without merit and have affirmed the judgment.

We here summarize the material facts of the case, from the testimony of the State's witnesses.

About 9:00 P.M., on November 13, 1969, Stuckey's Clover Farm Store on South Third Street in Memphis was robbed by two black men. T. T. Stuckey and his son owned the store. One of the robbers with a pistol drawn advanced on Mrs. Mary O'Rear the cashier, ordered her to open the cash register, and said "this is a hole-up, do as I say and you won't be killed." When Mrs. O'Rear opened the cash register the robber said "clean it out." The other robber walked from the door in behind Mrs. O'Rear, took the money and put it in a paper bag.

The robber also pointed the pistol at Mr. T. T. Stuckey who was in the store and saw the robbery. Mr. Stuckey said $942.00 was taken in the robbery. After the robbers made their get-away with the money, Mr. Stuckey called the police and reported the robbery. Later T. T. Stuckey and Mrs. Mary O'Rear separately viewed a police line-up and both identified the robber with the pistol as being Larry Hurd, who along with another suspect, John Edward Harris had been taken into custody. As a result of the police officers' questioning Hurd and Harris, the three defendants in the case at bar, Arthur Haywood Franklin, Frederick Johnson and Euan Bailey, Jr., were implicated in the robbery.

Lieutenant B. F. Hadaway of the Memphis Police Department arrested the three defendants at their respective homes between 3:00 and 3:30 A.M., December 9, 1969.

According to the testimony of Lieutenant B. F. Hadaway, the three defendants Franklin, Johnson and Bailey were not under the influence of drugs or intoxicants when arrested and questioned. Their rights under the Miranda decision were carefully read and explained to them and they indicated they understood them.

After the defendants were arrested they were taken directly from their homes to the Juvenile Court because they were 17 years old. They were then released by the Juvenile Court to the custody of the officers and were taken to police headquarters.

Specifically the officer testified the defendants were advised they had a right to remain silent. That anything they said could be used against them in a court of law. That they had a right to have a lawyer of their choice or court appointed if they could not afford one. That they had a right to talk to a lawyer before answering any questions, and to have him present while they were being questioned. The defendants made no request for an attorney but indicated they understood their rights and were willing to talk to the officers.

According to the testimony of Dennis Hauseman, Intake counselor of the Juvenile Court, the defendants were by the police brought to the Juvenile Court at 4:25 A.M., December 9, 1969. At 5:25 A.M., they were checked out to the arresting officers and held at City Police Department until 12:15 P.M., for the purpose of giving statements. They were then checked out from Juvenile Court at 1:40 P.M. Shortly thereafter they were remanded to Criminal Court to stand trial as adults. There were no bruises or abrasions on them and nothing to indicate they had been abused in any way.

The learned Trial Judge conducted a full and complete hearing out of the presence of the jury to determine the admissibility of the statements or confessions of the defendants.

The state's proof showed the defendants' constitutional rights had been carefully protected. That the confessions of the defendants were made freely and voluntarily after they had been fully warned of their rights.

The defendants testified on the hearing in the absence of the jury that they were not taken to the Juvenile Court as early as the officers testified they were, but that they were taken to the Juvenile Court later. They testified they were not advised of their rights and did not understand them. That they did not make any confession nor make any statements involving them in the robbery. That they did not knowingly and voluntarily sign any incriminating statements. While they admitted their signatures to the statements, they denied the contents of the statements. That they did not voluntarily sign their names to the alleged confessions, but signed them because the officers promised they would be released and allowed to go home if they signed the papers. That they did not know the contents of the papers they signed. The defendants testified that while alone with other participants in the robbery, Hurd and Harris said they implicated Franklin because the police had told Hurd and Harris they would let them off the hook in some other things if they involved Franklin.

According to the testimony of Lieutenant Hadaway the first oral statement was at 5:30 A.M. The confessions of the defendants were made about 8:30 A.M., to 10:00 A.M., December 9, 1969, after they had been fully advised of their rights.

That Larry Hurd, Willie Glinsey, Bailey, Franklin and Johnson were present, all together, when the statements or confessions were made. That none of the defendants made any objection or explanation when the confessions or statements were given. The officer testified he did not promise any of the defendants that he would let them go home if they would give a statement.

Each of the defendants voluntarily made oral statements which were written down by the officer and read to the defendants with the defendants reading along with the officers and then signed by the defendants. No promises of any kind were made by the officers and no threats were made and no abuse or violence was used to induce the confessions.

Arthur Haywood Franklin in his confession said he admitted driving a car he had stolen to the rear of Stuckey's Clover Farm Drive-In. He said he and Euan Bailey stayed in the car while Larry Hurd and William Johnson went in the store and robbed it. Hurd and William Johnson came back to the car and defendant Franklin drove to South Memphis where the money was divided. Defendant Franklin said he got $200.00 for his part.

In his testimony the defendant Franklin denied hearing any of the other defendants make any kind of oral statements while being questioned by the officers.

In the statement he gave the officer he said: "I parked the car in a lot behind the Stuckey Clover Farm Drive-In. I just sat in the car and after a while left and drove over on Fairview. I got about $200.00 later. I was in a 1963 white Chevrolet that I stole but I can't remember where." Signature of Arthur Franklin.

Frederick Warren Johnson's statement was that "I went out to Stuckey's Grocery in a white 1962 Chevrolet which I stole in Longview Heights. I parked behind a service station which is next door to Stuckey's. I walked in the front door and the lady put some money in a paper sack, and I got the money and left by the front door. I went to the car and drove straight home. I got about $600.00."

Euan Bailey, Jr., said "It was me, Franklin, Johnson and Hurd went out there to Stuckey's. Me and Franklin stayed in the car, Johnson and Hurd went inside. Hurd had a pistol, they went in and robbed some lady in there, and they

come out and we went to South Memphis. I got about $200.00 for my part."

W. B. Richmond testified he read the constitutional rights card, the Miranda warning, to Euan Bailey, Jr. Bailey said he understood his rights. Officer Richmond did not promise anything to Bailey to induce him to give a statement. He did not promise to allow him to go home if he would give a statement. That after he explained his rights to Bailey he asked Bailey what he did in taking part in the robbery and that the written statement which he signed in the presence of the officers was what Bailey told him. "I got in the car at my house. I stayed in the car. I was in a '62 dark blue Chevrolet parked in the back of the store. I didn't go in. I just stayed in the car. I rode in the car down Florida. I think around $800.00 or $850.00 came out of the robbery. I got about $200.00. After the money were split I went home. I didn't have a gun."

## ASSIGNMENTS OF ERROR

Assignments of error 1 and 2, challenge the weight, sufficiency and legality of the evidence and will be discussed together.

■ The jury are the judges of the facts and the weight and credibility of the evidence. They have by their verdict decided the facts of the case. The verdict of guilty approved by the trial judge has taken away the presumption of innocence and the defendants are here under the presumption they are guilty. A conviction will not be reversed on the facts unless the defendants show that the evidence preponderates against the verdict and in favor of their innocence. The defendants have failed to carry that burden. White v. State, 210 Tenn. 78, 356 S.W.2d 411; Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Webster v. State, 1 Tenn.Cr.App. 1, 425 S. W.2d 799. We find that the evidence does not preponderate against the verdict and in favor of the innocence of the defendants and that the verdict is not contrary to the law.

■ Turning now to assignment 3, the defendants contend it was error to admit in evidence their statements or confessions because they were not properly advised of their rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. This contention is untenable. The proof shows that the defendants were repeatedly and fully advised of their rights to remain silent, to have the benefit of counsel of their choice and if unable to employ an attorney one would be appointed. That whatever they said could be used against them in a court trial. They were asked if they understood their rights and they indicated they did. They did not request counsel. The proof abundantly shows the defendants were adequately and properly advised of their rights under the Miranda rule.

■ The defendants in their brief raise the "Bruton" question but at the same time they admit that question was not assigned in the motion for a new trial.

The proof shows the defendants were questioned in the presence of each other and in the presence of Hurd and Glinsey. That the confessions and admissions involving the criminal conduct of all of them and each of them was made in the presence of the defendants involved and that no objection was made at the time by any of them. No denial of the facts stated by each defendant concerning the criminal acts of the others was made by the other defendants at the time although each of them was present and in the hearing of the person giving the statement.

In a similar case involving these same defendants heard by us at the December 1971 Session at Jackson, in a well considered opinion by Special Judge John D. Templeton, we held this was not a question under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. There we said: "The defendants all confessed in the presence of each other, each one relating what he and the others did in the robbery. There is no material variation in

their accounts. Under these circumstances each defendant agreed by his confession that all the confessions were true so far as they agreed with his own."

Therefore we hold that we have no Bruton question here and that the confessions or statements of the defendants were properly admitted.

■ The defendants next contend the trial court erred in denying the motion for a directed verdict of acquittal.

T.C.A. § 40–2529 provides that the trial judge shall direct the jury to acquit the defendant if at the close of all the evidence he is of the opinion that the evidence is insufficient to warrant a conviction. With the defendants voluntarily confessing their guilt we are unable to see how a trial judge could disregard the evidence and direct a verdict of not guilty.

Since the evidence does not preponderate against the verdict we hold that a directed verdict of acquittal would not have been justified. See Taylor v. State, 2 Tenn.Cr. App. 459, 455 S.W.2d 168.

■ The defendants' next contention is that the verdicts of the jury are based solely on the uncorroborated confessions of the defendants. With this we cannot agree. We have held that a confession may sustain a conviction where there is other evidence sufficient to show the commission of the crime by someone. There is abundant evidence that the robbery was committed by two black males. See Taylor v. State, Tenn.Cr.App., 479 S.W.2d 659.

■ Assignment of error 6, complains of the argument of the district attorney. It cannot be considered because the argument was not made a part of the bill of exceptions.

■ The final assignment of error is that the defendant Franklin was denied his right to a speedy trial, that there was a delay of seventeen months between his arrest and trial.

The record shows the case was continued twelve times. The first three were by consent. May 10, 1971, the case was continued because the same defendants were on trial in another case. Then there were three instances when the case was reset by the Court. May 3, 1972, the case was again continued because the defendants were on trial in another case. Then there were three other instances that the case was reset by the Court. Then on January 8, 1973, the case was reset by consent.

Certainly there is nothing to show that the state purposely delayed bringing the defendant to trial. It is shown on occasions the case was reset or continued while the defendants were being tried on other cases.

There is no suggestion of any prejudice, inconvenience, harrassment, distress, worry or vexation suffered by the defendants.

There is no indication that the delay complained of unfavorably affected the defendant's ability to make a defense to the charges.

The defendant Franklin admits in his petition that he may have been responsible for part of the 17 months delay.

■ We think this assignment for failure to grant a speedy trial cannot be considered because the question was not raised in the trial court. If the question of not being granted a speedy trial was to be raised it should have been raised at the time of the trial and cannot be raised at a subsequent time in a habeas corpus proceeding, or on appeal. See McBean v. State, 50 Tenn. 20; State ex rel. Underwood v. Brown, 193 Tenn. 113, 244 S.W.2d 168.

The assignments of error are overruled and the judgment is affirmed.

We are grateful to Court appointed counsel for diligent service rendered.

OLIVER and GALBREATH, JJ., concur.